Tiega-Noel Varlack, Esq. (SBN 248203)
**VARLACK LEGAL SERVICES**
225 W. Winton Avenue, Suite 207
Hayward, CA 94544
Telephone: (510)-397-2008
Facsimile:  (510)-397-2997
E-mail: tiega@varlacklegal.com

Attorney for Plaintiff,
BIVETT BRACKETT

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| BIVETT BRACKETT, an individual, | ) Case No.: 4:21-CV-02681-HSG |
| | ) |
| Plaintiff, | ) |
| | ) **PLAINTIFF BIVETT BRACKETT'S** |
| vs. | ) **OPPOSITION TO DEFENDANT'S** |
| | ) **MOTION TO DISMISS** |
| AMERICAN AIRLINES INC., and DOES 1 | ) |
| through 10, | ) **Date:  Thursday, January 13, 2022** |
| | ) **Time:  2:00 PM** |
| Defendants. | ) **Dept.:  2** |
| | ) **Judge: Hon. Haywood S. Gilliam, Jr.** |
| | ) |
| | ) |
| | ) Complaint Filed:  January 11, 2021 |
| | ) Removal Filed:    April 14, 2021 |
| | ) Trial Date:      TBD |
| | ) |

# Table of Contents

I.  INTRODUCTION ................................................................................ 1

II.  STATEMENT OF ISSUES ................................................................ 1

III.  STATEMENT OF FACTS ................................................................ 1

IV.  ARGUMENT ...................................................................................... 3

 A.  MOTION TO DISMISS LEGAL STANDARD ............................. 3

 B.  SECTION 1981 INCLUDES THE EQUAL BENEFIT CLAUSE: AFRICAN AMERICANS ARE GUARANTEED THE FULL AND EQUAL BENEFIT OF ALL PROPERTY AND PERSONHOOD TO BE FREE FROM PRIVATE DISCRIMINATION .. 4

 C.  PLAINTIFF'S NEGLIGENCE CLAIM IS COGNIZABLE UNDER COMMON LAW PRINCIPLES AND AGENCY ................................................................ 7

 D.  PLAINTIFF STATES A CLAIM FOR BREACH OF CONTRACT. ............................ 11

 E.  STRIKING PORTIONS OF THE COMPLAINT ........................................... 13

V.  CONCLUSION ..................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**

*Adams v. Johnson*, 355 F.3d 1179 (9th Cir. 2004) ................................................ 4

*American Airlines v. Wolens*, 513 U.S. 219, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995) ............... 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................ 3, 4

*Augustus v. Board of Public Instruction*, 306 F.2d 862 (5th Cir.1962) ........................ 13

*Bary v. Delta Airlines, Inc.*, No. 02 Civ. 5202, 2009 WL 3260499, (E.D.N.Y. Oct. 9, 2009) ..... 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................ 3, 4

*Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000) ................................ 7

Da Chong Hong, Ltd. v. Silk Greenhouse, Inc., 719 F.Supp. 1072 (MD FL 1989) ................. 13

*Evan F. v. Hughson United Methodist Church* (1992) 8 Cal.App.4th 828 ...................... 11

*Federico v. Superior Ct. (Jenry G.)* (1997) 59 Cal.App.4th 1207 ............................ 11

*Gee v. Southwest Airlines*, 110 F.3d 1400 (9th Cir. 1997) .................................. 7

*Harris v. American Airlines, Inc.*, 55 F.3d 1472 (9th Cir. 1995) ........................... 7

*Hickcox-Huffman v. US Airways, Inc.* (N.D.Cal. Oct. 26, 2017, No. 10-cv-05193-HRL) 2017
   U.S.Dist. LEXIS 177995 ................................................ 12

*Hood v. Delta Airlines*, No. C 98-4024 (N.D. Cal., Apr. 2, 1999) .......................... 5

*Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116 (9th Cir. 2008) ...................... 3

*Keum v. Virgin Am., Inc.*, 781 F. Supp. 2d 944 (N.D. Cal. 2011) .......................... 6, 7

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc) ................................ 4

*Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) ................ 3

*Martin ex rel. Heckman v. Midwest Express Holdings*, 555 F.3d 806 (9th Cir. 2009) ......... 7

*Montalvo v. Spirit Airlines*, 508 F.3d 464 (9th Cir. 2007) ............................... 8

*Neitzke v. Williams*, 490 U.S. 319 (1989) ............................................ 3

*Poston v. American President Lines, Ltd.,* 452 F.Supp. 568 (S.D.Fla. 1978) ............... 13

*Roman Catholic Bishop v. Superior Court*, 42 Cal.App.4th 1556 (1996) .................... 11

*Starker v. Spirit Airlines* (S.D.N.Y. Sept. 3, 2019) 2019 U.S.Dist.LEXIS 149702 ........... 12

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ......................................... 4

*Trigueros v. Sw. Airlines*, No. 05 Civ 2256, 2007 WL 2502151 (S.D. Cal. Aug. 30, 2007) ...... 6

*U.S. Oil Co., Inc. v. Koch Refining Co.,* 518 F.Supp. 957 (E.D.Wis. 1981) ................ 13

*United States v. Carver*, 160 F.3d 1266 (10th Cir. 1998) ................................................ 7

*Vinnick v. Delta Airlines*, 93 Cal.App.4th 859 (2001) ...................................................... 9

## STATUTES

49 U.S.C. § 41713 ................................................................................................................ 9

Civ. Code § 1714 ................................................................................................................. 7

Civ. Code § 2100 ................................................................................................................. 9

Civ. Code § 2103 ................................................................................................................. 7

Fed. R. Civ. Proc. 12(f) ....................................................................................................... 1

## RULES

Fed.R.Civ.P. 8(a)(2) ............................................................................................................ 3

## OTHER AUTHORITIES

12 Cong. Globe, 39th Cong., 1st Sess. 474 (1866) ............................................................. 5

12 Cong. Globe, 39th Cong., 1st Sess. 476 (1866) ............................................................. 5

CACI No. 425 ...................................................................................................................... 11

Restatement (Second) of Agency, § 213 ............................................................................. 10

**MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO DISMISS - Case No.: 4:21-cv-02681-HSG**

Plaintiff,  BIVETT BRACKETT hereby submits her Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. Plaintiff's First Amended Complaint provides fair notice of the Plaintiff's claims and the facts alleged sufficiently to show plausible claims for relief. Accordingly, Defendant's motion should be denied.

## I.    INTRODUCTION

In an attempt to avoid liability, Defendant has moved to dismiss Plaintiff's First Amended Complaint. Defendant argues that the Plaintiff's First Amended Complaint ("FAC"), and each cause of action therein, pursuant to Fed. R. Civ. Proc., Rule 12(b)(6), fails to state a claim upon which relief may be granted. Defendant also moves the court to strike portions of the First Amended Complaint under  Fed. R. Civ. Proc., Rule 12(f) on the grounds that the material is scandalous, immaterial, and/or impertinent. However, Defendant's arguments lack legal and factual support and should be disregarded, because Plaintiff has stated cognizable claims.

## II.    STATEMENT OF ISSUES

a.  Whether Plaintiff alleged sufficient facts to state a claim for violation of 42 U.S.C. § 1981, negligence and breach of contract.

b.  Whether historical data of American's ill-treatment of African American passengers is scandalous, immaterial or impertinent when the facts show that a corporate culture of bias informed employees' treatment of African American passengers which is the foundation of Plaintiff's negligent hiring and supervision claim.

## III.    STATEMENT OF FACTS

1.  On October 25, 2017, the NAACP, the nation's oldest civil rights organization, issued its first ever travel advisory for American Airlines describing, "a pattern of disturbing incidents reported by African-American passengers, specific to American Airlines."

2.  It warned black travellers that American Airlines could subject them to "disrespectful, discriminatory or unsafe conditions."

3.  The advisory continued, listing four incidents in particular as examples that "suggest a corporate culture of racial insensitivity and possible racial bias on the part of American Airlines."

4. The "growing list" of such incidents "reflects an unacceptable corporate culture and involves behavior that cannot be dismissed as normal or random," said Derrick Johnson, president and CEO of the NAACP.

5. Johnson continued, "[w]e are concerned today that the examples cited herein may represent only the 'tip of the iceberg' when it comes to American Airlines' documented mistreatment of African-American customers."

6. The organization called for an "audience" with the airline.

7. In reply, American Airlines stated, "[w]e are disappointed to hear about this travel advisory as our team members - a diverse community of gate agents, pilots, and flight attendants - are proud to serve customers of all backgrounds."

8. Then, on November 30, 2017, American Airlines CEO Doug Parker and other senior leaders met with NAACP President Derrick Johnson and other leaders to discuss four specific actions American Airlines is taking to make our airline a more diverse and inclusive company.

9. American acknowledged "While we are proud of our longstanding commitment to equality and diversity – from the team members we hire to the communities we serve – discrimination and implicit bias sometimes create outcomes that are less than ideal for many of our team members and customers."

10. American then vowed to take four specific actions to address the problems with diversity and inclusion that landed it on a travel advisory list.

11. First, it would conduct a diversity and inclusion gap analysis.

12. Second, implement company-wide implicit bias training: beginning in January 2018, American will build on existing anti-discrimination training and implement annual implicit bias and training for each of its 120,000 team members.

13. Overhaul its customer discrimination claims process.

14. Sharpen its focus on team member concerns.

15. Then, not even two years after making these promised changes, on August 5, 2019, Plaintiff attempted to board a flight from Miami, Florida to San Francisco, California.

**PLAINTIFF BIVETT BRACKETT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC**
**Case No.: 4:21-cv-02681-HSG**

16. Plaintiff is a frequent flyer and aware of travel regulations and requirements for baggage.

17. Plaintiff was told that her bag did not meet the size requirements by an American Airlines gate manager, and he continued to harass her threatening to call the police.

18. Plaintiff watched other passengers embark upon the same flight with luggage the same size as hers but, who did not share her protected class status, as an African American Woman. Defendant, by and through its agent, still refused to let plaintiff on the plane.

19. Defendant 's agent yelled and screamed at plaintiff and intimidated her by blocking her person and preventing her free movement to the entry gate.

20. Plaintiff suffered from racial discrimination, humiliation and inconvenience and is concerned that this incident will cause future pain and suffering to her mental health.

## IV.   ARGUMENT

### A.  MOTION TO DISMISS LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F. 3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also, Neitzke v. Williams*, 490 U.S. 319, 326 (1989). ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.")

Even under the liberal pleading standard of Fed. R. Civ. P. 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of

the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also, Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.") The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief...[is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

Contrary to Defendant's assertions, the complaint contains well-pled factual allegations from which this Court could reasonably infer that Defendant's actions were liable. Defendant argues that "The Complaint should be dismissed since Plaintiff's claims lack supporting details." (Motion at P. 3:8-10) Not so.

**B.  SECTION 1981 INCLUDES THE EQUAL BENEFIT CLAUSE: AFRICAN AMERICANS ARE GUARANTEED THE FULL AND EQUAL BENEFIT OF ALL PROPERTY AND PERSONHOOD TO BE FREE FROM PRIVATE DISCRIMINATION.**

The facts demonstrate that American is liable for discrimination in violation of 42 U.S.C. § 1981.

> **42 U.S. Code § 1981**
> **(a)Statement of equal rights**
> **All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains,**

**PLAINTIFF BIVETT BRACKETT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC**
**Case No.: 4:21-cv-02681-HSG**

> penalties, taxes, licenses, and exactions of every kind, and to no
> other.
> **(b) "Make and enforce contracts" defined**
> For purposes of this section, the term "make and enforce
> contracts" includes the making, performance, modification,
> and termination of contracts, and the enjoyment of all benefits,
> privileges, terms, and conditions of the contractual
> relationship.
> **(c)Protection against impairment**
> The rights protected by this section are protected against
> impairment by nongovernmental discrimination and
> impairment under color of State law.

Section 1981 was designed as a comprehensive statute to secure civil rights for the freed slaves. Senator Trumbull, the sponsor of the act, explained: "[t]he first section of the bill defines what I understand to be civil rights: the right to make and enforce contracts, to sue and be sued, and to give evidence, to inherit, purchase, sell, lease, hold, and convey real and personal property, and to full and equal benefit to all laws and proceedings for the security of person and property."

He continued, "[t]hese I understand to be civil rights, fundamental rights belonging to every man as a free man, and which under the Constitution as it now exists, we have a right to protect. Indeed, "[t]he full and equal benefit clause, which guarantees the right to the "full and equal benefit of all laws and proceedings for the security of person and property." 12 Cong. Globe, 39th Cong., 1st Sess. 476 (1866).

To state a claim pursuant to section 1981, a plaintiff must allege (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute. *Hood v. Delta Airlines*, No. C 98-4024 (N.D. Cal., Apr. 2, 1999).

American argues that Brackett failed to "allege the requisite facts to plead such a claim." Def. Mot. at 18. American also argues that Brackett's allegations are disjointed and conclusory. Not so.  In making this one-sided argument, American ignores the spirit of the law which is to prevent exactly the kind of conduct its agent visited upon Brackett.  As the bill's author argued, more than two hundred years ago, "the measure is intended to give effect to [ ] and secure to all persons within the United States practical freedom." 12 Cong. Globe, 39th Cong., 1st Sess. 474

(1866). Here, Brackett, who was there, alleged that American's reaction to her, yelling at her, blocking her, and threats to call the police was because of race, because no one else who was not African American was treated that way. And no argument raised by the Defendant can change that fact. *Id*. ("There is very little importance in the general declaration of abstract truths and principles unless they can be carried into effect, unless the persons who are to be affected by them have some means of availing themselves of their benefits.")

Brackett alleges that she was denied services, prevented from embarking where Hispanic and Caucasian passengers were permitted, and treated differently than the Hispanic and Caucasian passengers were. The Court should find that based on these facts, Brackett's allegations are adequate. (*Keum v. Virgin Am., Inc.*, 781 F. Supp. 2d 944, 954 (N.D. Cal. 2011), citing *Trigueros v. Southwest Airlines*, No. O5-CV-2256-L, 2007 U.S. Dist. LEXIS 64234, 2007 WL 2502151, at *4 (S.D. Cal., August 30, 2007) (holding that plaintiffs who alleged rude and harassing treatment from airline employees had stated a sufficient claim to establish a prima facie case and thus shift the burden to the airline to demonstrate a non-discriminatory explanation).

Further, Brackett submits that American's threat to call the police and refusal to allow her to board was motivated by racial bias. See, e.g., *Bary v. Delta Airlines, Inc.*, No. 02 Civ. 5202, 2009 WL 3260499, at *9-10 (E.D.N.Y. Oct. 9, 2009) (denying motion for summary judgment as to Section 1981 claim alleging that airline allowed white passengers to carry bags onto aircraft but prohibited plaintiff, a black man, from doing so, based on indirect evidence giving rise to an inference of unlawful discrimination); *Trigueros v. Sw. Airlines*, No. 05 Civ. 2256, 2007 WL 2502151, at *4 (S.D. Cal. Aug. 30, 2007)

Plaintiff contends that American's actions affected an "enumerated activity" within the meaning of Section 1981, because American's threats coupled with an active assault by its agent to prevent Brackett's departure, interfered with her contractual right to embark upon her flight and travel to her destination. These actions further violated Section 1981's "protective clause" which prohibits American from "punishing" Brackett in a different way than it "punished" non-African Americans. American further was not supposed to impede Brackett

from equal benefits provided to person or property. It is clear from these facts that American violated both clauses. For these reasons, the motion to dismiss should be overruled. See, e.g., *Bary v. Delta Airlines, Inc., supra*, 2009 WL 3260499, at *9-10. As such, American impaired Brackett's "rights 'to make and enforce contracts,'" *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000).

### C.  PLAINTIFF'S NEGLIGENCE CLAIM IS COGNIZABLE UNDER COMMON LAW PRINCIPLES AND AGENCY.

Contrary to Defendant's assertions that Cal. Civ. Code § 1714 applies to firearms, Plaintiff submits that the statute is simply a common law recitation of the law of negligence and this circuit has already held that common law negligence tenets is the correct application of law to the airlines. *Keum v. Virgin Am., Inc.* (N.D. Cal. Mar. 4, 2011), 781 F.Supp.2d 944, 2011 U.S. Dist. LEXIS 28358 (holding that that the Civ. Code § 2103 standard of care applied given that the airlines passenger's tort claims did not clearly implicate airline safety.)

Civ. Code section 2013 provides that "a carrier of persons for reward must give to passengers all such accommodations as are usual and reasonable, and must treat them with civility and give them a reasonable degree of attention." Cal. Civ. Code § 2103 (Deering, Lexis Advance through Chapter 1-84, 86-95, 97-100, 102, 103, 105-110, 112, 114, 115, 117-123, 125-133, and 135-142 of the 2021 Regular Session, including all urgency legislation effective July 15, 2021, or earlier)

By holding that tort claims relating to services such as the "pushing of beverage carts, keeping the aisles clear of stumbling blocks, the safe handling and storage of luggage, assistance to passengers in need, or like functions" are not preempted, the Ninth Circuit expressly overruled *Harris v. American Airlines, Inc.*, 55 F.3d 1472 (9th Cir. 1995) and *Gee v. Southwest Airlines*, 110 F.3d 1400 (9th Cir. 1997). *United States v. Carver*, 160 F.3d 1266 (10th Cir. 1998).

In *Martin ex rel. Heckman v. Midwest Express Holdings*, 555 F.3d 806 (9th Cir. 2009), the court noted that the FAA itself makes no mention of federal courts developing a federal common law standard of care for airplane personal injury actions, and there is no federal general common law." *Id.* at 811 (internal quotation and citation omitted). The court concluded that:

> *Montalvo*, then, neither precludes all claims except those based on violations of specific federal regulations, nor requires federal courts to independently develop a standard of care when there are no relevant federal regulations. Instead, it means that when the agency issues "pervasive regulations" in an area, like passenger warnings, the FAA preempts all state law claims in that area. In areas without pervasive regulations or other grounds for preemption, the state standard of care remains applicable.

This holding clarified the Ninth Circuit's previous decision in *Montalvo v. Spirit Airlines*, 508 F.3d 464 (9th Cir. 2007). In *Montalvo*, the Ninth Circuit discussed whether the state standard of care is preempted in the context of tort claims directed at airlines, where those claims implicated aircraft safety concerns. *Id.* The court held that "federal law generally establishes the applicable standards of care in the field of aviation safety." *Id.* at 468.

Defendant states on its own website: "Here, As used in this contract "ticket" means this "passenger ticket and baggage check," or this "itinerary/receipt" if applicable in the case of an electronic ticket, of which these conditions and the notices form part. "Carriage" is equivalent to "transportation"; "carrier" means all "air carriers" that carry or undertake to carry the passenger or his baggage hereunder or perform any other service incidental to such air carriage. https://www.aa.com/i18n/footer/conditions-of-carriage.jsp?locale=en_HK) American continues, "Electronic ticket" means the "itinerary/receipt" issued by or on behalf of carrier, the "electronic coupons" and, if applicable, a "boarding document" The "Warsaw Convention" means the "convention for the unification of certain rules relating to international carriage by air" signed at Warsaw, 12th October 1929, or that convention as amended at The Hague, 28th September 1955, whichever may be applicable." *Id.*

Here, Plaintiff was flying domestically and thus was not confined to the Warsaw Convention. *See, Id.* In any event, the condition of carriage or contract stated, "CABIN BAGGAGE: Passengers are usually permitted a free cabin baggage allowance, the limit of which may differ by airline, class, route, and/or aircraft type. It is recommended that cabin baggage be kept to a minimum. Please ask your travel agent or airline for more specific information." *Id.*

American continued, "Refer to http://www.iata.org/bags for information and links to airline websites." *Id.* "**No agent, servant or representative of carrier has authority to alter,**

**modify or waive any provision of this contract**." (*Id.,* **emphasis** added.) Here, American's agent yelling, blocking, and refusing to let Plaintiff and her Cabin Baggage on the airplane constituted a unilateral modification of the terms of carriage. Put a different way, American's unilateral denial of cabin baggage based on race breached its contract of carriage, which was supposed to be applied uniformly. As stated in the Complaint herein, "Plaintiff alleges that Defendant breached this contract by violating their duty to provide full and equal enjoyment of their services without discrimination on the ground of race." (Complaint.)

Plaintiff also alleges that Defendant's breach of contract caused harm to Plaintiff for which American Airlines, Inc. should pay to redress. (Complaint ¶¶14-15.) In this way, Brackett has stated a claim. *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1063 (9th Cir. 2017.) ("We look to the terms of transportation to see whether it may be read as a contract to deliver the bag when she landed, rather than the next day. . . . Putting these terms together, the $15 Hickcox-Huffman paid was consideration for delivery upon her arrival at her destination of her checked bag."). In *Hickcox*, the Ninth Circuit Court of Appeals considered the question of whether Hickcox-Huffman could bring a claim for breach of implied as well as express contract related to her baggage. *Id.* The court answered in the affirmative to both and concluded that, under the **Supreme Court**'s decision in *American Airlines v. Wolens*, 513 U.S. 219, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995), the **ADA** did **not preempt** Hickcox-Huffman's breach of express contract claim.[1] *Id.* at 1064. (*Hickcox-Huffman v. US Airways, Inc.* (N.D. Cal. Oct. 26, 2017, No. 10-cv-05193-HRL) 2017 U.S. Dist. LEXIS 177995, at *3.)

Likewise, Plaintiff posits that she has stated a cognizable claim for negligence. An airline is required to exercise the same duty of care to its passengers that a common carrier is required to exercise. *Vinnick v. Delta Airlines*, 93 Cal.App.4th 859 (2001). Most courts hold an airline to the highest degree of care with regard to the safety of its passengers. (*Id.; see also* Cal. Civ. Code § 2100.) In those courts, however, the airline is therefore responsible for acts of negligence. *Id.* Although airlines are generally only responsible for injuries sustained by passengers, under some circumstances they may be liable for injuries sustained by non-passengers, such as persons

---

[1]  ADA stands for the Airline Deregulation Act of 1978, as codified at 49 U.S.C. § 41713, *et seq*.

injured on the ground in an aircraft accident. *See, Id.*

In this case, California law should apply to Plaintiff's claims because the contract was performed in San Francisco and completed in San Francisco. (Complaint.) Indeed, Plaintiff was embarking on her return flight when an agent of AA yelled at her, blocked her path, and erroneously refused to let her Cabin Baggage on board. The fact that the assault happened in Miami is not dispositive of American's duty to hire fit employees and to guard against the risk of harm that American's employee caused on the day in question.

Moreover,

> [a]n employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit.... The rule of direct employer liability under the Restatement (Second) of Agency, § 213 is: 'A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others....'

> As explained in comment (d): 'The principal may be negligent because he has reason to know that the ... agent, because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him." Further, "[i]f the dangerous quality of the agent causes harm, the principal may be liable under the rule that one initiating conduct having an undue tendency to cause harm is liable therefor . . . An agent ... may be incompetent because of his reckless or vicious disposition, and if a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty, he is subject to liability for harm caused by the vicious propensity."

That is to say, "[o]ne who employs another to act for him is not liable . . . merely because the one employed is incompetent, vicious, or careless. If liability results it is because, under the circumstances, the employer has not taken the care which a prudent man would take in selecting the person for the business in hand . . . Liability results ... not because of the relation of the parties but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment. ...' (Rest. 2d Agency, *supra*, § 213, com. d., *italics* added.)" (*Roman Catholic Bishop v. Superior Court*, 42 Cal.App.4th 1556, 1564–65

**PLAINTIFF BIVETT BRACKETT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC**
**Case No.: 4:21-cv-02681-HSG**

(1996), and see, *Evan F. v. Hughson United Methodist Church,* 8 Cal.App.4th 828, 842–43 (1992).) *Federico v. Superior Ct. (Jenry G.),* 59 Cal.App.4th 1207, 1213–14 (1997), as modified on denial of reh'g (Dec. 8, 1997).

Here, Defendant's red herring argument in its brief that "negligence requires and unintentional act" fails to mention that gross negligence is found by either acting or by failing to act. (CACI No. 425) "Gross negligence is the lack of any care or an extreme departure from what a reasonably careful person would do in the same situation to prevent harm to oneself or to others." *Id.*

Here, it was grossly negligent for American's agent to negligently assume that Plaintiff, as an African American, was not a frequent flyer and was not aware of travel regulations and requirements for baggage.

Plaintiff was not told that her bag did not meet the size requirements by American Airlines Gate Managers as they continued to harass her threatening to call the police.

As captured on video, the Gate Manager continued to show an extreme departure from what a reasonably careful person would do in the same situation to prevent harm to himself or to others. He yelled and screamed at Plaintiff and intimidated her by blocking her person and preventing her free movement to the entry gate.

This evidence, as pled, belies Defendant's argument that Plaintiff fails to allege any facts to suggest the agent was unfit or posed a particularized risk, or that American Airlines knew or should have known the agent was unfit or posed a particular risk. The complaint explains chapter and verse thar American knew its employees were biased, knew they were under a travel advisory, and did nothing to train the agent not to harm plaintiff. Plaintiff has alleged facts to show the agent's unfitness caused her harm, or that American Airlines was negligent. The motion should be denied.

### D.  PLAINTIFF STATES A CLAIM FOR BREACH OF CONTRACT.

Defendant argues that Plaintiff's breach of contract claim fails because she did not identify any specific contract term that American allegedly breached. Not so. Brackett's Complaint alleges that in allowing its agent to yell, block and prevent Brackett's cabin baggage

from entering the airplane, American Airlines unilaterally breached its conditions of carriage, which is the contract that governed the parties' relationship. (*See,* Complaint) Defendant breached the conditions of carriage by allowing Plaintiff to bring a checked bag to its ticket booth and past its gate, and then only requiring Plaintiff to check her carryon luggage after allowing White and Hispanic passengers with the same size bags to embark with their property.

An airline may be liable to its passengers for an aircraft accident based upon its status as a common carrier, its contract with the passengers, or an implied or express warranty regarding the safety of its aircraft. (*See* (*Hickcox-Huffman v. US Airways, Inc.* (N.D. Cal. Oct. 26, 2017, No. 10-cv-05193-HRL) 2017 U.S. Dist. LEXIS 177995, at *3.

When an airline issues a ticket to a passenger, it enters into a contract of carriage with the passenger.[2] If the airline breaches the contract of carriage, the passenger may bring a breach of contract action against the airline. *Ibid.*

The Federal Aviation Act of 1958 provides that no air carrier shall give or cause any unreasonable preference or advantage to any particular person or subject the person to unjust discrimination or unreasonable prejudice. See, e.g., *Bary v. Delta Airlines, Inc.*, No. 02 Civ. 5202, 2009 WL 3260499, at *9-10 (E.D.N.Y. Oct. 9, 2009.) Under the Act, an airline may be liable to its passengers for discrimination or for wrongful expulsion. However, an airline is not liable for refusing to carry a passenger or for expelling a passenger who is considered to be dangerous or to be a safety threat. (*Starker v. Spirit Airlines* (S.D.N.Y. Sept. 3, 2019) 2019 U.S. Dist. LEXIS 149702, at *19.)

"To state a claim for breach of contract under California law, a plaintiff must allege (1) the existence of a contract; (2) that she performed or that her performance is excused; (3) defendant breached the contract; and (4) damages resulted from that breach." Here, Defendant breached its contract of carriage because it acquiesced to allow Brackett her bags when she checked in and then after she got to the gate the agent who was discriminatory in his leanings allowed all Hispanics and Caucasians to board and this violated the contract of carriage.

---

[2] Conditions of carriage or contract is found here: https://www.aa.com/i18n/footer/conditions-of-carriage.jsp?locale=en_HK

**PLAINTIFF BIVETT BRACKETT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC**
**Case No.: 4:21-cv-02681-HSG**

These actions further violated Section 1981's "protective clause" which prohibits American from "punishing" Brackett in a different way than it "punished" non-African Americans.

## E.  STRIKING PORTIONS OF THE COMPLAINT

The Court should overrule the Defendant's motion to strike the allegations in the complaint based on American's history of bias and abuse against African American Passengers. (Mot. at p. 11.) Because the corporate culture is relevant to show Defendant's *lack of mistake* in its treatment of Brackett on the day in question and the allegations are relevant to show a deliberate indifference to widespread issues of bias which support an award of punitive damages. Motions to strike on the grounds of insufficiency, immateriality, irrelevancy, and redundancy are not favored, often being considered "time wasters," and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties. *Poston v. American President Lines, Ltd.,* 452 F.Supp. 568, 570 (S.D.Fla. 1978), citing *Augustus v. Board of Public Instruction*, 306 F.2d 862 (5th Cir.1962). In evaluating a motion to strike, the Court must treat all well pleaded facts as admitted and cannot consider matters beyond the pleadings. *U.S. Oil Co., Inc. v. Koch Refining Co.,* 518 F.Supp. 957, 959 (E.D.Wis. 1981). In relation to redundant, immaterial, impertinent or scandalous matters, motions seeking to strike these are rarely granted. Where there is any doubt as to the relevance of the challenged allegations, courts will err on the side of permitting the allegations to stand, particularly if the moving party establishes no prejudice. (*Da Chong Hong, Ltd. v. Silk Greenhouse, Inc.,* 719 F.Supp. 1072, 1073 (MD FL 1989).)

Here, the facts that are within the common knowledge of anyone with access to the Internet is that on October 25, 2017, the NAACP, the nation's oldest civil rights organization, issued its first ever travel advisory for American Airlines describing, "a pattern of disturbing incidents reported by African-American passengers, specific to American Airlines." American acknowledged "While we are proud of our longstanding commitment to equality and diversity – from the team members we hire to the communities we serve – discrimination and implicit bias sometimes create outcomes that are less than ideal for many of our team members and customers." American then vowed to take four specific actions to address the problems with

diversity and inclusion that landed it on a travel advisory list. These facts are facts, and they are relevant to the foundation of Plaintiff's case. The court should thus overrule American's attempt to strike them.

**V.   CONCLUSION**

Plaintiff submits that in her Complaint, she has plausibly alleged American's intent to discriminate against her based on her race. Brackett alleges that she, Plaintiff, watched other passengers board the same flight with luggage the same size as hers but, who did not share her protected class status as an African American Woman. Defendant, by and through its agent, still refused to let Plaintiff on the plane.

Defendant's agent yelled and screamed at Plaintiff and intimidated her by blocking her person and preventing her free movement to the entry gate.

Plaintiff suffered from racial discrimination, humiliation and inconvenience and is concerned that this incident will cause future pain and suffering to her mental health.

Based on the foregoing, Plaintiff respectfully requests that the Court overrule Defendant's Rule 12(b)(6) Motion to Dismiss.

DATED: September 28, 2021

VARLACK LEGAL SERVICES

By: _____
Tiega-Noel Varlack, Esq.
Attorney for Plaintiff,
BIVETT BRACKETT

**PLAINTIFF BIVETT BRACKETT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC**
**Case No.: 4:21-cv-02681-HSG**